[S. F. No. 12846. In Bank.—December 20, 1928.]

In the Matter of the Estate of MATHEW KELLEHER, Deceased. RICHARD T. POMEROY, etc., Petitioner and Appellant; NANO DENNEHY McAULIFFE et al., Contestants and Appellants.

Livingston & Livingston, John C. Quinlan, Coffey & Coffey, and Mathew Tobriner for Contestants and Appellants.

George E. Stoker and McNair & Stoker for Petitioner and Appellant.

LANGDON, J.—This is an appeal from an order granting, in part, the petition of Richard T. Pomeroy, individually and as executor of the will of Mathew Kelleher, deceased, for partial distribution of said estate. Said petition was opposed by certain persons claiming to be the next of kin and heirs at law of said decedent.

All parties, the petitioner and the various persons who opposed his petition, have appealed from said order. They have stipulated that their appeals may be consolidated and heard upon one record.

The main controversy centers about the construction to be placed upon the following residuary clause of the will of deceased: "I appoint as my executors Richard T. Pomeroy Millstreet Co Cork and William Reardon Millstreet Co Cork and I give them in equal shares the residue of my property for the carrying out of the foregoing bequests."

William Reardon, one of the executors named, predeceased the testator. Richard T. Pomeroy, the other executor named, came to San Francisco from Ireland to have the will admitted to probate and to procure his appointment as executor thereof. The will was admitted to probate and Mr. Pomeroy was appointed executor and qualified as such on September 26, 1921.

By the aforesaid decree of partial distribution, the probate court construed the above-quoted residuary clause to mean that decedent gave the residue of his property to the named executors as a recompense for their services in acting as executors. This construction was in accord with the contention of petitioner Pomeroy. The next of kin have appealed from this part of the decree, their contention being that decedent intended by said clause to give the residue of his property to his executors in trust to pay legacies, debts and expenses of administration.

In its construction of the residuary clause we are in accord with the trial court. We think that when the will, as a whole, is considered, it is clear that the phrase, "for the carrying out of the foregoing bequests," means as a remuneration for carrying out the directions contained in the other portions of the will. The testator did not give the entire estate to the executors "for carrying out the foregoing bequests," but he gave them only the residue after provision had been made out of his property for certain specific legacies, monuments, etc. The contention of the heirs implies that the will made a double provision for the payments of the legacies and other expenses directed to be incurred by the executors—one in the specific clauses per-

taining to these matters and the other in the residuary clause.

By its decree, the probate court also held that, by reason of the death, prior to the death of decedent, of the named executor William Reardon, decedent died intestate as to an undivided one-half of the residue of his estate; that decedent's next of kin were entitled to take such intestate half, and that petitioner Pomeroy was entitled to take the remaining half as compensation for his services as executor.

In so holding, the probate court accepted the contention of the next of kin. Petitioner Pomeroy has appealed from this part of the decree, his contention being that the residuary bequest was a gift to a class—to two persons jointly, as compensation for their services in performing the duties of an office which was necessarily joint; that he is the survivor of that class and alone has performed the duties and, therefore, is entitled to the entire residue. In this holding we are also in accord with the ruling of the probate court. The question involved seems to be governed by the rule announced in *Estate of Murphy,* 157 Cal. 63 [137 Am. St. Rep. 110, 106 Pac. 230]. In that case the court construed the following residuary clause in a will: "All the rest of my property . . . shall go to and be equally divided among the four children of my late sister . . . that is to say: I give, devise and bequeath all the rest of my . . . property . . . share and share alike to Timothy J. Flynn, William D. Flynn, Mary Jane Logan and Kate I. Prendergast." In that case, as in the instant case, the residue was to persons in a designated class, but the persons were specifically named. The court there said: "As to a gift to a class the rule is stated as follows: 'In legal contemplation a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number.' "

"Tested under this rule, there is nothing in the devise which would indicate that the intention of the testator was that the devisees should take as a class, or in any other way than as individuals, and under our code provisions

as tenants in common. There is nothing on the face of the devise indicating any uncertainty in the number of persons who were to take the property, or that they were to be ascertained at a future time, or that the share of the residuary estate which the devisees were ultimatly to have was to be determined as to the amount by the number of those who would survive the testator. All the persons who are to take were specifically named and the share of each was designated. . . . It is true that the testator uses language in the clause of his will which would, if it stood alone, amount to a devise to a class. This would be the result if the devise had been to 'the four children of my late sister Catherine' without further words. But here the terms of the bequest—the designation of the number of children, followed by a repeated and express devise to them by name and in an equal share—cannot be ignored so as to make the other words in the will constitute a class.''

The probate court further held, by its decree, that all debts of decedent and all expenses of administration of his estate should be charged against the intestate half of the residue, giving to the executor his one-half undiminished by any debts or expenses. The next of kin have appealed from this part of the decree.

While the rule would seem to be otherwise in many jurisdictions, in California, because of certain statutory provisions, it has been held, in *Estate of Hall*, 183 Cal. 61 [190 Pac. 364], that it is not necessary to deduct the charges against the estate before the residue is ascertainable, and that portions of the residue undisposed of by the will must be used for the payment of charges before resort may be had to the residuary legacies effectually devised or bequeathed.

It is also contended by the next of kin that certain lapsed legacies do not fall into the residue of the estate in this case, contrary to the usual rule, because of the peculiar language of the will. It is argued that because the testator listed in his will everything he then owned, that his act in listing his assets indicates he had a specific fund in mind which he intended for his residuary legatees, and consequently such fund could not be augmented by lapsed legacies. We cannot agree with this contention. The rule is stated in the *Estate of Upham*, 127 Cal. 90 [59

Pac. 315]: "Where the residuary bequest is not circumscribed by clear expression in the instrument and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid disposition, or other reason." In *O'Connor* v. *Murphy*, 147 Cal. 148 [81 Pac. 406], the matter was discussed in the following language: "It is not enough that it appears from a clause of the will, simply that the testator intended to make a particular devise of a portion of his estate which, however, for some reason, failed to be effectual; because, if that were the rule, it would apply to every lapsed or invalid bequest, and the residuary clause could never be effectual to carry it."

"On the contrary, it must appear unequivocally that it was the intention of the testator, not only to make a particular devise, but it must further appear from the terms of such devise, or from other provisions of the will, that it was the intention of the testator that the residuary clause should not in any event carry such bequest should it become inoperative for any reason. The intention to include all ineffectual bequests in the residuary clause is presumed; the intention to exclude must appear from appropriate language evidencing that intention or by clear implication."

There is only one other question involved upon the appeals, and that is the contention of the next of kin that petitioner Pomeroy should have completed his administration of the estate before asking for a distribution of any of the property to himself. It is contended that if the residuary bequest be considered as compensatory, it presupposes a complete performance of the duties of the executor. We think the contention untenable. The facts of this case present an unusual situation. None of the next of kin, appealing here, are close relatives of the testator. He, apparently, left neither mother nor father, brother or sister, uncle or aunt or first cousin. The only bequest in the will to anyone within any of these classes lapsed because of the death of the legatee before the death of the testator. When petitioner Pomeroy arrived in San Francisco to probate the will, he found that the property of decedent had been transferred to a third person shortly before the testator's death under a trust instrument, and protracted litigation resulted to recover the property for the estate

upon the theory that it had been transferred at a time when decedent was of unsound mind. The litigation was carried to this court upon appeal and the decision thereof appears in *Pomeroy* v. *Collins,* 198 Cal. 46 [243 Pac. 657]. Incidentally, the executor had to defend another action instituted by one Helen H. Walsh to admit to probate a certain letter as a holographic codicil to the will of decedent. (*Estate of Kelleher,* 202 Cal. 124 [54 A. L. R. 913, 259 Pac. 437].) In the meantime, certain proceedings had been commenced to determine heirship, under section 1664 of the Code of Civil Procedure. That proceeding, although instituted in 1924, was undetermined at the time the appeal herein was taken. It appears that the executor has proceeded as far as he may with the probate proceedings and is delayed indefinitely in the matter of final distribution until the determination of heirship which is necessary for the distribution of the intestate portion of the estate. In the meantime, he has spent many years untangling the various complications growing out of the situation, and it seems but equitable that he should have the benefit of at least a portion of the property to which he is entitled. The trial court reserved out of the share of said executor sufficient property to pay for the services of a possible administrator with the will annexed in the event petitioner should for any reason be unable or unwilling to complete the final steps of the administration of this trust, so no possible injustice can be done to anyone by the present partial distribution. Section 1616 of the Code of Civil Procedure provides for partial allowance on account of statutory fees of an executor, and we see no reason for a different rule when the fees are those fixed by the will itself.

The fees for attorney's services being a proper expense of administration are payable like the other expenses of administration, and are not a personal charge against the executor.

The order appealed from is affirmed.

Seawell, J., Richards, J., Shenk, J., Waste, C. J., Curtis, J., and Preston, J., concurred.